George W. Yeager and Ethel Yeager v. Commissioner. Austin H. Toms and Dorothy Toms v. Commissioner.
George W. Yeager & Ethel Yeager v. Commissioner
Docket Nos. 39116, 39117.
United States Tax Court
1953 Tax Ct. Memo LEXIS 87; 12 T.C.M. (CCH) 1184; T.C.M. (RIA) 53335; October 22, 1953
*87 1. Upon dissolution of a partnership, petitioners, having been fully reimbursed by the retiring partner for proceeds of coal sold by him, suffered no deductible loss. 2. Attorney's fees and court costs incurred in procuring an injunction against the retiring partner, requiring him to account for the proceeds of sales of partnership property, held deductible as ordinary and necessary business expenses of petitioners. Kornhauser v. United States, 276 U.S. 145. Ellsworth T. Simpson, Esq., 1000 Vermont Avenue N.W., Washington, D.C., for the petitioners. J. Nelson Anderson, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion This action is brought to test the correctness of respondent's determination of deficiencies of $2,576 in Docket No. 39116 and $1,612.88 in Docket No. 39117 in income taxes for the calendar year 1948. The primary issue for decision is whether petitioners sustained a deductible loss in connection with the dissolution of a coal mining partnership whereby petitioners acquired the interest of a retiring partner and other consideration in settlement of accounts receivable by the partnership from the retiring *88 partner. An additional issue involves the deductibility of attorney's fees and court costs incurred by petitioners in obtaining an injunction prohibiting the retring partner from appropriating proceeds of sales of partnership property to his own use. Other issues raised in the notices of deficiency are not contested. The stipulated facts are incorporated herein by this reference. Findings of Fact Petitioners in Docket No. 39116, George W. Yeager and his wife Ethel Yeager, the former being hereinafter sometimes referred to as Yeager, filed their joint Federal income tax return for 1948 with the collector for the district of West Virginia. Petitioners in Docket No. 39117, Austin H. Toms and his wife Dorothy Toms, the former being hereinafter sometimes referred to as Toms, filed their joint Federal income tax return for 1948 with the collector for the district of Virginia. Yeager and Toms, hereinafter sometimes referred to as the petitioners, formed a partnership with Norman W. Lee, hereinafter sometimes referred to as Lee, on October 1, 1946. That partnership conducted its business operations under the trade name of North Pole Coal Company with principal offices located in *89 Arlington, Virginia. It kept its books and records and filed its Federal returns of income on the accrual basis. It was organized for the purpose of conducting a coal mining business and held mining leases to two coal mining properties located in McDowell County, West Virginia. Under the terms of the partnership agreement entered into by petitioners and Lee dated October 1, 1946, Lee and Yeager were each to have a 37 1/2 per cent interest and Toms was to have a 25 per cent interest, which percentages were applicable to both profits and dissolution. It was further provided that all sales of coal from the partnership mines were to be handled exclusively by the Independent Operators Sales Company of Arlington, Virginia, at specified brokerage commissions. The Independent Operators Sales Company was operated by Lee as a sole proprietorship and amounts due from that company were entered as accounts receivable on the books of the North Pole Coal Company. Throughout its existence, the partnership sold all of the coal extracted from its mines in accordance with the aforementioned contract. The balances in the accounts receivable on the books of the partnership became progressively greater *90 throughout the life of the partnership. As of December 31, 1947, they amounted to $43,572.33 and by November o0, 1948, they had reached $60,385.82. Petitioners became aware that Lee was withholding substantial portions of the sales proceeds from the partnership for the purpose of using the funds in connection with his other business activities. They held a number of conferences with him to discuss the size of the accounts receivable due the partnership and finally when Lee refused or failed to pay the amount of the accounts receivable, they retained the services of an attorney for the purpose of enjoining him from further appropriating funds of the partnership to his own use. Petitioners instituted legal action against Lee and on December 4, 1948, an injunction was obtained from the Circuit Court of Arlington County, Virginia, restraining Lee from disposing of any funds due the partnership which might come into his possession thereafter. The injunction was to remain in effect until December 15, 1948. On December 9, 1948, Yeager, Toms and Lee each signed and acknowledged a contract of partnership dissolution, the pertinent portions of which are set forth below: "WHEREAS, the parties *91 hereto have mutually consented and agreed that the said partnership shall be determined and dissolved as of the close of business on the 9th day of December, 1948, and "WHEREAS, it has been agreed that the retiring partner shall receive any amount due to him as his share in said business, including capital, stock, effects and good will thereof, and shall withdraw from the said business, leaving the same to be carried on by the continuing partners for their own benefit or otherwise as they might think proper; and "WHEREAS, the value of the share of the retiring partner in the said business has been agreed to be the sum of $41,000.00; and "WHEREAS, the liabilities of the said retiring partner to the continuing partners amounts to the sum of $49,446.74; and "WHEREAS, the continuing partners have agreed to credit the share of the retiring partner against the liability of the retiring partner to the continuing partners and the retiring partner has agreed that his share in the partnership shall be credited against his liability to the continuing partners; and "WHEREAS, after crediting the share of said retiring partner against his liabilities to the continuing partners there remains *92 the sum of $8,446.74, owed by the retiring partner to the continuing partners; and "WHEREAS, said liability of $8,446.74 owed by the retiring partner to the continuing partners is to be evidenced by one negotiable promissory note made by the retiring partner to the order of the continuing partners, payable in 30 days. "NOW THEREFORE, for and in consideration of the premises, the parties hereto dissolve as and from the 9th day of December, 1948, the partnership heretofore subsisting between them in the business aforesaid." It was further provided that Lee should be released from further liability for debts of the partnership but that he must account in full for sales of coal from December 1 through December 9, 1948. At the time of dissolution, the accounts receivable from Lee amounted to $51,965.37. The discrepancy between this amount and the figure of $49,446.74 set forth in the contract of dissolution is attributable to an outstanding but unrecorded check drawn by Lee in the amount of $2,750 and minor corrections as to the amounts of coal shipped after December 1, 1948, the weight of which had been estimated when the contract was drawn. The gross sales and reported net profits *93 of the partnership were as follows for the periods shown: Period
Gross Sales
Net Profits
Oct. 1 - Dec. 31, 1946
$ 78,852.39
$ 5,525.70
Calendar year 1947
296,194.61
20,997.79
Jan. - Nov. 30, 1948
228,133.48
26,906.75
During the same periods, deductions for depletion expense with corresponding credits to reserve for depletion were taken in the following amounts, respectively: $2,249.40, $14,540.23 and $11,241.45. Monthly production of coal varied from 2,071 to 4,705 tons during the period from January 1 to November 30, 1948. In December, 1948, coal production was 1,887 tons. The balance sheet for the partnership as at November 30, 1948, is as follows: ASSETS
Current Assets: Cash in Bank
[7,015.79)
Petty Cash
2,500.00
Accounts Receivable - Coal Sales
60,385.82
Accounts Receivable - Others
344.08
Accounts Receivable - Overdrafts
177.87
Powder Inventory
1,322.18
Total Current Assets
$57,714.16
Deferred Charges: Insurance
$ 359.51
Vacations
2,199.48
2,558.99
Fixed Assets: Equipment (Book Value)
$12,066.48
Leasehold
2,806.88
Total Fixed Assets
14,873.36
Total Assets
$75,146.51
LIABILITIES
Current Liabilities: Accounts Payable
$ 4,603.98
Notes Payable
344.38
Accrued Payroll
5,818.09
Accrued Taxes
2,702.40
Accrued W.C.I.
568.62
Total Current Liabilities
$14,037.47
Reserves: Depletion
31,140.41
Net Worth: Lee
Yeager
Toms
Capital a/c 12/31/47
$ 8,893.96
$ 8,694.50
$ 5,050.21
Add: 1948 Profit
8,890.03
11,090.02
6,926.70
17,783.99
19,784.52
11,976.91
Less: 1948 Withdrawals
3,860.21
9,976.59
5,739.99
$13,923.78
$ 9,807.93
$ 6,236.92
29,968.63
Total Liabilities
$75,146.51
*94 The mining properties labeled "Leasehold" on the books and in the balance sheet were carried at $2,806.88 throughout the life of the partnership. The successor partnership, composed of the petitioners, filed a partnership return for the entire month of December, 1948, although not formed until December 9, 1948. In computing net income, it deducted the sum of $17,917.20 as "Loss on settlement with N. W. Lee". In their individual income tax returns for 1948, petitioners claimed, as a reduction to partnership income, losses totaling $17,918.20 on the basis that they had been forced to compromise the accounts receivable from Lee. That figure was computed by petitioner as follows: Account due (11/30/48)
$60,385.82
Credits: Original investment
$ 4,875.00
Capital account (undistributed earnings)
9,048.78
Cash on account
8,419.45
Depletion reserve (37 1/2%)
11,677.65
Personal note
8,446.74
42,467.62
Net Loss Claimed
$17,918.20
The individual income tax returns of the petitioners showed Yeager's claimed deduction to be 56.25 per cent of the alleged loss of $17,918.20 and Toms' claimed deduction to be 43.75 per cent. In connection with the litigation *95 leading to issuance of the aforementioned injunction, attorney's fees of $2,000 and court costs of $120 were incurred. These expenses were borne entirely by Yeager and Toms, who reported them as ordinary and necessary business expenses in the return of the successor partnership for December, 1948. Opinion ARUNDELL, Judge: The principal issue involved herein is whether petitioners suffered a deductible loss incident to their dealings with Norman W. Lee and the dissolution of a partnership in which all three were members in the latter part of 1948. Petitioners and Lee signed and acknowledged a contract of partnership dissolution dated December 9, 1948, wherein it was agreed that Lee, the retiring partner, should receive an amount equivalent to the value of his share in the business to include capital, stock, effects and good will, which share was agreed to be of the value of $41,000. It was further provided that this share was to be credited against the account receivable from Lee which, it was stated, amounted to $49,446.74. Lee was to execute a 30-day promissory note in the amount of $8,446.74, the exact excess of the stated account receivable over the stated value of Lee's share *96 in the partnership. Petitioners now take the position that the real value of Lee's share was substantially less than the $41,000 set forth in the contract of dissolution and that consequently they were forced to settle the account receivable for $17,918.20 less than its book value. [1] This amount, they now submit, was a loss deductible from the partnership earnings for 1948. In arriving at the claimed loss, petitioners credited Lee with $4,875 for his original investment, $9,048.78 for his share of earnings left in the partnership, and $11,677.65 as his share of the depletion reserve totaling $25,601.43. We think that this method of computing the value of Lee's share does not give effect to the true value of the assets of the partnership. The principal business of the partnership was the mining and selling of coal from its two properties in West Virginia. In the initial period of partnership operation from October 1, 1946 to December 31, 1946, profits amounted *97 to $5,525.70. In the calendar year 1947, profits were $20,997.79. From January 1 to November 30, 1948, sufficient coal was mined and sold to show a profit on the books of $26,906.75 and the fact that petitioners experienced difficulty in collecting cash from Lee has no bearing on the value of the coal producing facilities. All of the above profits are after deduction of depletion allowances. On the books of the partnership, the account labeled "Leasehold" carried the two mines at a combined figure of $2,806.88 from the original date of organization. That same amount is shown on the balance sheet dated November 30, 1948. Petitioner Toms testified that the coal supply was dwindling and that the mines had "very little value" in his opinion at the time of dissolution. We note, however, that petitioners had sufficient interest in the business to continue it as a new partnership during December, 1948, and that they continued to operate it in corporate form in 1949. Moreover, the books disclosed that notwithstanding a temporary closing of the mines in December, 1948, 1,887 tons of coal were produced in that month as compared to production in other months of the year varying from 2,071 *98 to 4,705 tons. Clearly petitioners acquired Lee's 37 1/2 per cent interest in the mines through the partnership dissolution. We cannot, from the record before us, determine the exact value of those properties but we think it manifest that the book value of $2,806.88 has no relation to the true value. The business had shown increasing and very substantial earnings in light of the relatively small investment and we are convinced that the value of Lee's interest in the partnership was at least equal to the balance of the account receivable due from him. It follows that petitioners suffered no loss from the dissolution, having received full value for releasing Lee from further payments on the account. An additional issue was raised with regard to the deductibility of attorney's fees and court costs totaling $2,120. Following Lee's refusal to pay the account receivable, petitioners retained an attorney who took the necessary steps to obtain an injunction against Lee, dated December 4, 1948, prohibiting him from appropriating to his own use any proceeds from the sale of partnership coal which might come into his hands. In his determination of the tax liability of petitioners, respondent *99 disallowed the fees and costs of the litigation which petitioners had claimed as ordinary and necessary business expenses in the return of the successor partnership for the month of December, 1948. [2] The books show that these expenses were borne entirely by Yeager and Toms. We think tha the $2,120 item is clearly deductible by petitioners. In , a former partner of the taxpayer brought suit against him for an accounting of professional fees. The suit was won by the taxpayer and he sought to deduct the expenses of litigation. The Supreme Court held that such ordinary and necessary expenses are fully deductible where the litigation is directly connected with or proximately results from the business. In the case at bar, the action brought by petitioners was in the nature of a demand for an accounting by Lee of the proceeds from the sale of property belonging to the business and we think *100 it makes no difference whether the taxpayer is plaintiff or defendant in such an action. In holding that no loss resulted to petitioners through the dissolution of the partnership, we found it unnecessary to pass on respondent's alternative theory that the acquisition of Lee's interest was a capital transaction which would bar the deduction of any loss regardless of the true value of the capital assets acquired. We are convinced, however, that the litigation expenses could not be considered a part of that transaction in any event. It is our opinion, therefore, that since the legal fees and court costs were ordinary and necessary expenses directly related to the business of petitioners, those expenses were erroneously disallowed by respondent. Decisions will be entered under Rule 50. Footnotes
1. It appears that there is an error of $1 in this computation. The stipulation refers to $8,419.45 in cash paid on account while the books show $8,420.45. Using the latter figure, the loss claimed should total $17,917.20.↩
2. In carrying the claimed losses into their individual returns, petitioners concede that they were in error in prorating them on the basis of 56.25 per cent to Yeager and 43.75 per cent to Toms rather than on a 60 per cent-40 per cent basis.↩